36 C.C.P.A.(Patents)

### Application of FLETT.

### Patent Appeal No. 5572.

United States Court of Customs and Patent Appeals.

April 12, 1949.

Forbes Silsby and I. Harry Rosenberg, both of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all the claims, numbered 1 to 8, inclusive, 9 and 10, of appellant's application for patent relating to the production of mixtures of alkyl aryl sulfonates. All the claims are method claims and the specification recites, in substance, that the alleged invention relates to improving the properties, especially the odor, of mixtures of alkyl aryl (or benzene) sulfonates which contain as nuclear substituents radicals derived from the hydrocarbons present in a kerosene fraction of petroleum.

The claims are quite long, contain much functional matter, and do not differ from each other in any patentable sense. Claim 1 is deemed sufficient to illustrate the subject matter. It reads:

"1. A method of retarding the development of an unpleasant odor in a mixture of alkyl aryl sulfonates having as nuclear substituents radicals derived from a polycomponent hydrocarbon mixture of mineral origin by a Friedel and Crafts condensation, said mixture containing impurities which impart a color to said mixture and impurities which cause development of an unpleasant odor in said mixture when stored in the dry form, *which comprises treating an aqueous solution of said impure mixture of alkyl aryl sulfonates containing at least 4 parts of the impure mixture of alkyl aryl sulfonates per 100 parts by weight of the solution with an active carbon adsorbent, the amount of active carbon being sufficient to substantially decolorize an aqueous sugar solution of the same concentration and color, separating the treated solution from the adsorbent, and evaporating the solution to dryness,* whereby the mixture of alkyl aryl sulfonates is rendered capable of being stored in the dry form for a lo ıger period of time without developing an unpleasant odor to an undesirable degree than an identical mixture of alkyl aryl sulfonates which has

not been subjected to said treatment, even though no substantial improvement in the color of said aqueous solution of the mixture of alkyl aryl sulfonates is effected by said treatment."

The italicized language covers the alleged invention.

In several of the claims "benzene" is used instead of "aryl" in naming the mixture treated and the brief for appellant recites other differences (which are unimportant so far as patentability is concerned) in the following:

"Claims 1, 2 and 5 define the above process broadly.

"Claims 3, 4, 6, 7 and 8 limit the temperature of the active carbon treatment to a temperature above 40° C., and specifically 60° to 80° C. (in claim 8).

"Claims 6, 7, 8 and 11 limit the concentration of the aqueous solution subjected to the treatment to 4 to 14 parts by weight of the impure sulfonate mixture per 100 parts by weight of the solution.

"Claims 10 and 11 are more limited forms of claims 5 and 7 in which the amount of active carbon employed is 3 to 6 parts per 100 parts by weight of the impure sulfonate mixture."

The claims were held unpatentable over a patent to Guenther et al., 2,220,099, dated November 5, 1940, in view of the disclosure of a publication described as " 'Chemical Engineering Catalog,' 17th Ed., 1932, pages 703, 722 & 742."

It was held that the Guenther et al. patent discloses a method of preparing sulfonates substantially similar to the method disclosed in appellant's specification. This holding, so far as method is concerned, is not challenged by appellant.

The "Chemical Engineering Catalog" was cited for its disclosure of the uses of activated carbon in the purification of various solutions. Concerning it the board said:

" * * * with regard to the use of active carbon for the purpose of deodorizing liquids, we think that the publication to which the Examiner refers amply discloses such use. In connection with the product, 'Darco,' page 722, the first paragraph points out that this highly activated carbon has the property of deodorizing liquids, solutions and liquefiable substances. It has been used in the purification of oils, fats and waxes of various kinds, as well as solutions of organic chemicals. It is stated, in short, any liquid from which it is desired to eliminate impurities in the form of odor may be treated with this product. Page 703 of the publication refers to 'Carbex,' activated carbon, which also has the property of purifying liquid materials."

It was the opinion of the board that, in view of the art cited, "it would be obvious to a person skilled in the art to apply such a well known purifying agent [active carbon] to the products of Guenther et al for the purpose of removing impurities therefrom which give rise to unpleasant odors."

The brief for appellant insists that there is a distinction between the prior art cited and his alleged invention in that the prior art merely teaches the use of specific active carbon adsorbents as agents for the removal of colored and odorous impurities from various substances, while he teaches that the application of the active carbon adsorbent, which he describes, to an odorless solution will produce an advantageous result upon the solution product after it is dried and stored.

It is noted that the appealed claims describe the active carbon adsorbent which appellant proposes to use in a somewhat peculiar way. It is to be (as defined in claim 1, supra) in an amount "sufficient to substantially decolorize an aqueous sugar solution of the same concentration and color."

We assume from that description that, in order to determine the amount of the active carbon which should be used as a step in appellant's process of deodorization, the amount of such carbon required to decolorize a solution composed of sugar and water is first determined and this amount is then used in the solution from which the alkyl aryl (or alkyl benzene) sulfonates are developed and eventually stored in dried form. The claims recite that the latter solution contains (a) impurities which impart a color to it and (b) impurities which cause the development of an unpleasant

odor when the mixture is stored after being dried.

The claims themselves are not entirely clear as to the solution being odorless before the ultimate products are dried and stored, but they are capable of that construction, and the brief for appellant treats them as having that meaning. Furthermore, the brief treats the claims as meaning that color in the solution is not affected and that only the impurities which cause the development of the odor in the dried product are affected. It is said, in fact, that at the time the carbon element is injected into the solution the solution is substantially odorless.

We quote the following from the brief for appellant:

"Owing to the strong surface active properties of the mixtures of alkyl aryl sulfonates of the type referred to in the rejected claims, appellant made a discovery which was not to have been expected from Chemical Engineering Catalog and the Guenther patent, when he found that active carbon will remove, from aqueous solutions of the type and concentration called for in the rejected claims, impurities which are not colored or odorous but which cause eventual development of odor in the dried mixtures.

\*    \*    \*    \*    \*    \*

"Both Examiner and the Board of Appeals have treated this case as if they were dealing merely with a malodorous substance present as an impurity in a known substance. Such is not the case at all.

"This application relates to the removal of an impurity *of unknown constitution,* which does not manifest itself as such during the course of manufacture of the product, and which does not make its presence known until *a considerable period has elapsed after manufacture* of the product *has been completed,* at which time it generates an obnoxious odor in the product which is slight at first but increases in intensity with the passage of time." (Italics quoted)

It does not seem to be questioned by appellant that the cited prior art teaches the use of an active carbon adsorbent for the purpose of deodorizing (as well as for decoloring) liquids, solutions, and liquefiable substances. The "Chemical Engineering Catalog" teaches that, referring to a highly activated carbon sold under the trade name of "Darco." The alkyl aryl (or benzene) sulfonates, into which the introduction of the active carbon is taught by appellant, is a solution in liquid form at the time the carbon is introduced. It is said, in substance, in the brief for appellant, that the solution is odorless at that time, but that it contains "an impurity of unknown constitution" which makes its presence known by emitting an obnoxious odor a considerable time after manufacture of the ultimate product has been completed.

The brief for appellant is quite elaborate and to a considerable extent repetitious. We have studied it carefully together with the affidavits of Messrs. Toone and Snell filed in support of the teachings of the specification. We are not convinced, however, that appellant's contribution to the art presents patentable subject matter. The characteristics of active carbon as an adsorbent of color and odor in various solutions and substances being well known, it does not seem to us that invention was required to apply it to solutions while they were in the liquid stage (which is a stage incident to the manufacture of the eventually dried alkyl aryl [or benzene] sulfonates) for the purpose of retarding for a time the development of an unpleasant odor.

A question of res judicata was injected into the case. The examiner in an early office action held the question to have been adjudicated in the rejection of an earlier application by appellant, but it was not set forth in the examiner's statement following the appeal to the board, nor was it mentioned in the board's decision. It is at least questionable whether the rule was actually relied upon in the final disposition of the case by the board and in view of our conclusion on the merits it is unnecessary to our decision to pass upon that question.

The decision of the Board of Appeals is affirmed.

Affirmed.